[No. A017464. First Dist., Div. Three. May 22, 1986.]

In re the Marriage of ANNE and BYRON TEEGARDEN.
ANNE TEEGARDEN, Respondent, v.
BYRON TEEGARDEN, Appellant.

**COUNSEL**

Robert J. Zweben and Kathleen F. Sikora for Appellant.

C. Martin Gibson and Gibson & Gibson for Respondent.

**OPINION**

**BARRY-DEAL, J.**—Byron Teegarden (husband) appeals from that portion of the interlocutory judgment of dissolution of marriage denying him an award of spousal support. He contends the trial court abused its discretion (1) in denying him a continuance when he was unable to attend the trial due to his illness; and (2) in denying him spousal support and refusing to retain jurisdiction over the matter.

*Facts*

Husband and wife were married December 18, 1971, and separated June 5, 1979. There were no children.

Until husband became ill in 1977, both had been gainfully employed. While his illness was not diagnosed at the time of separation, it was later

identified as lupus.[1] Due to this illness, husband was receiving disability benefits.

Husband did not request spousal support at the time of separation in June 1979. He did so, however, after wife filed the petition for dissolution on August 7, 1980, and he was awarded temporary spousal support of $250 per month, commencing on August 1, 1981, continuing through November 30, 1981, or the date of trial, whichever came first.

Trial was set for November 9, 1981. On the preceding Friday, husband allegedly notified his attorney that he was ill and that he might not be able to attend trial on Monday. Husband's attorney asked opposing counsel on Friday to agree to a continuance, but the request was denied. On the morning of trial, in the master calendar department, husband's attorney moved for a continuance, presenting to the court a letter from husband's physician saying that husband was ill. The letter is not part of the record. The motion was heard in chambers, apparently unreported, as we have no transcript of that hearing. Wife's counsel in chambers represented that he was prepared to stipulate that husband was entitled to and was receiving disability payments under social security and that husband's financial declaration could be admitted into evidence. The motion was then denied on the record in open court.

At the start of the trial in the assigned department, husband's attorney again moved for a continuance, but did not resubmit the letter from husband's physician. The trial court denied the oral motion on the basis that a record had been made and the motion had already been ruled on in the master calendar department and proceeded with the trial.

---

[1]"[L]upus erythematosus, systemic . . . [is a] serious, often fatal, disease accompanied by various lesions (injuries) in the viscera (organs), skin eruptions, fever, and other symptoms. Pathologically it is characterized by abnormal changes in the connective tissues, especially of the arterioles (small arteries). The organs and tissues primarily involved are the kidneys, the spleen, and the endocardium (the inner lining of the heart). The condition is also marked by the presence of lupus erythematosus cells (abbreviated L.E.C.), abnormal leukocytes containing ingested nuclei of other cells that have been damaged. These cells are found in the blood and bone marrow, and their presence (detected by laboratory procedures) is helpful in the diagnosis of the disease. The outstanding clinical signs include weakness, fatigability, arthritis, redness of the skin in patches (on the face, neck, and arms), pericarditis . . ., pleurisy, swelling of the lymph nodes, anemia, etc. . . ." (2 Schmidt's Attorneys' Dict. of Medicine and Word Finder (1986) p. L-120.)
"Systemic lupus erythematosus is a noninfectious, inflammatory disease of unknown cause, characterized by widespread visceral involvement. It frequently affects the skin, serous membranes, kidney, heart, brain, and vascular system. . . . The clinical course may vary from an acute, fulminating, rapidly fatal illness to a chronic, low-grade episodic disorder spanning many years." (12 Cyclopedia of Medicine, Surgery, Specialties (1972) p. 398-A.)

After the matter was submitted, the court granted the dissolution and reserved jurisdiction to determine the division of wife's pension plan. On the question of spousal support, the court came to the "unpleasant conclusion" that husband had not met his burden of proving his need for such support. After findings were settled, the interlocutory judgment was entered on February 11, 1982.

In March 1982, the court heard husband's motion for a new trial. Husband's supporting declaration affirmed that he was ill and physically unable to attend court on the day of trial, that he remained at home on the advice of his physician, and that "given a chance I could convince the Court that my need is real and my expenses are reasonable." The supporting affidavit of husband's physician, dated February 3, 1982, described husband's illness as a collagen disease characterized by profound lack of stamina, severe neurological problems, dermatitis, severe weight loss, severe photosensitivity, transient blindness, occasional abdominal pain, and rash. The physician stated that he "became aware" between November 6, 1981, and November 9, 1981, that husband's condition had dramatically worsened and that "[i]t was my opinion that he was unable to appear in court at that time . . . [but] [h]is condition at the present time would allow for an appearance. . . ."

In the opposing declaration of wife's counsel, he stated that he had returned the call of husband's counsel on the Friday preceding trial, that husband's counsel was not available, and that he had discussed the matter with the secretary, who informed wife's counsel that husband was ill and "'did not think he could be at the trial.'" The secretary also stated that husband's counsel "had a criminal appearance in the East Bay the morning of the trial and would not be able to appear for trial." Wife's counsel informed the secretary that he would oppose a continuance.

After oral argument, the court took the matter under submission and later denied the motion for a new trial.

### Denial of Continuance

Husband contends that the trial court's refusal to grant a continuance at the time of trial was an abuse of discretion.

If proper notice of the trial has been given, either party may bring an issue to trial and proceed to judgment in the absence of the other party unless the court for good cause continues the matter or drops it from the trial calendar. (Code Civ. Proc., § 594.)

Although the trial court has discretion in granting or denying a continuance, that discretion is not unlimited. Rule 224 of the California

Rules of Court provided in part that "[n]o continuance before or during trial in civil cases shall be granted except upon an affirmative showing of good cause therefor. . . ."[2] Guidance in determining good cause is provided by the California Standards of Judicial Administration adopted by the Judicial Council. (See *County of San Bernardino* v. *Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 779 [140 Cal.Rptr. 383]; *Young* v. *Redman* (1976) 55 Cal.App.3d 827, 831-832 [128 Cal.Rptr. 86].)

Section 9 of the California Standards of Judicial Administration, adopted in 1971, directs the trial courts to adopt a firm policy regarding continuances to insure the prompt disposition of civil cases and reiterates that a continuance should be granted only on an affirmative showing of good cause. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 7 et seq., p. 24 et seq.) Under section 9, illness of a party is considered good cause for granting the continuance of a trial date, provided, however, that the illness is supported, wherever possible, by an appropriate declaration of a medical doctor, stating the nature of the illness and the anticipated period of any incapacity. Further, if it is anticipated that the incapacity of such party will continue for an extended period, the continuance should be granted on condition of taking the deposition of the party so that the trial may proceed on the next date set. Section 9 stresses that no continuance requested other than by noticed motion, with supporting declarations, should be granted except in an emergency occurring after the trial setting conference that could not have been anticipated or avoided with reasonable diligence and cannot properly be provided for other than by a continuance.

". . . In ruling on a motion for a continuance, the court should consider all matters relevant to a proper determination of the motion, including . . . the diligence of counsel, particularly in bringing the emergency to the court's attention and to the attention of opposing counsel at the first available opportunity and in attempting to otherwise meet the emergency . . . ." (Cal. Standards Jud. Admin., § 9.)

In the case at bench, we have no record of the hearing in chambers of husband's oral motion for a continuance on the morning of trial. Nor does the record contain the unverified letter of husband's physician submitted to the court in support of the request for a continuance or an explanation for counsel's lack of diligence in preparing for an emergency which could reasonably be anticipated for husband's type of illness. The record made at the hearing on the motion for a new trial, which *does* contain the affidavit of husband's physician and is before us, is not a substitute for the record of the hearing on the motion for a continuance made four months earlier.

---

[2] See now California Rules of Court, rule 375(a), effective January 1, 1985.

An appellant must affirmatively show error by an adequate record. (*Calhoun* v. *Hildebrandt* (1964) 230 Cal.App.2d 70, 72 [40 Cal.Rptr. 690]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, pp. 276-277.) In the absence of a record, we will not disturb the implied finding of the trial court that husband had failed affirmatively to show good cause for the continuance when the court exercised its discretion to deny husband's motion on the morning of trial.

### *Spousal Support*

██ Husband contends that the trial court abused its discretion in denying him spousal support and failing to reserve jurisdiction or, alternatively, that the trial court failed to find on a material issue, that the findings were inadequate to support the judgment, and that the conclusions of law were erroneous.

██ Historically, an award of spousal support was within the broad discretion of the trial court, subject to reversal only for an abuse of that discretion. (*In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 77 [190 Cal.Rptr. 104].) This discretion is statutorily recognized in the Family Law Act by Civil Code section 4801, which provides: "'In any judgment decreeing the dissolution of a marriage . . ., the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. . . .'" (*In re Marriage of Davis, supra,* at p. 77.)

The Legislature, however, has established objective standards for the exercise of the trial court's discretion by directing the court to consider the following circumstances of the respective parties: ". . . (1) The earning capacity of each spouse, . . . [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including the separate property, of each. [¶] (4) The duration of the marriage. [¶] (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (6) The time required for the supported spouse to acquire appropriate education, training, and employment. [¶] (7) The age and health of the parties. [¶] (8) The standard of living of the parties. [¶] (9) Any other factors which it deems just and equitable. . . ." (Civ. Code, § 4801, subd. (a).)

Before husband's motion for a continuance was denied in the trial department, husband's counsel recited the stipulation offered in the master calendar department that husband's financial declaration could be admitted into evidence and that husband "is disabled and unable to work" without objection from wife's counsel. The evidence then introduced consisted of

the parties' financial declarations, the testimony of wife, and the testimony of Ms. Pola, who provided care for husband.

Wife's financial declaration, prepared in July 1980, was supplemented by her testimony that her current gross earnings were $1,766.68 and her net was $1,038.18 (after deduction of $106 per month for a savings plan). Her monthly expenses were $1,019, which included $40 every other week for psychotherapy. She waived spousal support.

Husband's declaration, prepared in June 1981, revealed that husband received net disability benefits of $526.30 per month and that his monthly expenses were $968.33, including $375 for a nurse. In his declaration, husband stated, "[m]y major expense is for practical nursing care. Without this expense I would not need the spousal support. However, my social security case established that I am totally disabled and that I cannot earn a subsistence income on practically any job in spite of my good education and diverse job skills."

Husband did not introduce any expert testimony relating to the diagnosis of his disease or his prognosis, and the court indicated it was unfamiliar with the disease known as lupus.

Ms. Pola, who was neither a registered nor a licensed vocational nurse, testified that she worked two and a half short days a week as a dental assistant, but at other times was "on 24 hour call" for husband. She had been taking care of him for approximately two years, but an objection was sustained when she started to testify about the diagnosis made by husband's physician. She nevertheless described his condition: "His condition does alter. For the past couple of weeks he has been really bad because he loses control of his legs and he can't stand up sometimes. And the eye sight is fair in one eye but almost totally gone in the other. And he's having a bowel problem, a urine problem. He seems not to be able to contain himself at all times. This time it seems to be about the worst." She further testified that his condition was cyclical and that she provided ". . . really complete care. Everything from preparing his meals to sometimes bathing. Sometimes he can bathe. . . . I take him to the doctor when he has to go. I do his washing. Everything." She took care of his financial affairs because he could barely write. She also testified that he had used up his savings, that his only income was from disability and from the temporary spousal support he had been receiving from wife, but that he was "optimistic" and hopeful that he would "lick this thing" and be able to work.

Wife, on direct examination by her counsel, testified that husband had worked until his illness in August 1977, that the two of them had gone to

many specialists for diagnosis of husband's illness and for treatment, but that the illness had not been diagnosed and the treatment was ineffective. She learned at the hearing on temporary support that the medical condition qualifying him for disability benefits was lupus. At the time of separation husband was drinking about a quart of vodka a day. Husband first told her that he would seek spousal support about a year after separation.

Based upon the above evidence, the court found in pertinent part that: "9. Both parties were gainfully employed during the marriage and through August, 1977 when [husband] ceased working due to illness. [¶] . . . . [¶] 11. The individual to whom [husband pays $375 per month] is neither a Registered Nurse nor a Licensed Vocational Nurse. [¶] 12. The nature and extent of any physical or emotional disability claimed by [husband] was not established by the evidence. [¶] 13. [Husband] failed to meet his burden of proof that he is entitled to any sum as and for spousal support." The court rejected husband's proposed findings that he suffered from a condition known as lupus, that he required home care to assist in his daily activities, and that he had been unable to seek or to procure any gainful employment due to his condition.

The court also rejected husband's conclusion of law that husband "is denied support at this time but at a future time, upon the proper showing, would be eligible to receive spousal support." It concluded instead that husband "is denied spousal support."

Although husband did not introduce expert testimony to show "the nature and extent of any physical or emotional disability" (finding No. 12), wife testified to the diagnosis of lupus, and Ms. Pola described his condition and symptoms in some detail. The fact that neither was a qualified expert did not justify complete rejection of their testimony on the nature and extent of the illness. The Supreme Court has held that although expert testimony is helpful, it is not necessary to establish the basis for an award of pain. (E.g., *Capelouto* v. *Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 895-896 [103 Cal.Rptr. 865, 500 P.2d 880], and cases collected therein.) A lay witness has long been competent to testify to an opinion, "based on his [or her] observation of facts perceptible to the senses, of the health or disease of another. (*Robinson* v. *Exempt Fire Ins. Co.* (1894) 103 C. 1, 5 . . . .)" (Witkin, Cal. Evidence (2d ed. 1966) The Opinion Rule, § 399, p. 359, italics omitted.) By a parity of reasoning, it did not require expert testimony to conclude from the evidence regarding husband's symptoms, including incontinence and general inability to function at the most rudimentary level, that his ability to support himself had been severely if not totally destroyed by illness.

We do not understand the significance of finding No. 11 that Ms. Pola, who took care of husband, was neither a registered nurse nor a licensed vocational nurse. Wife testified that husband quit working due to his illness, that he had been bedridden for a short while, and that his condition had not improved after treatment by various experts. Ms. Pola testified that he needed routine care in his daily activities. The court could, of course, reject Ms. Pola's testimony that husband needed daily care on the basis that it was not credible, but no evidence was presented that husband either needed or claimed a need for nursing care by a registered or licensed nurse. Finding No. 11 is irrelevant.

Finding No. 13 that husband failed to meet his burden of proof that he is entitled to spousal support can only be based on an implied finding that all the testimony was not credible and the express finding that the nature and extent of his illness was not established.

■■■ While it is not our function, but that of the trial court, to determine credibility of witnesses, here we have what appears to be a wholesale disregard of *all* the testimony before the court. Even if this were justified, the court was left with the parties' financial declarations which showed that husband was on disability and wife's income was approximately twice his and the stipulation of the parties that husband was disabled and unable to work. Under these circumstances, we can only conclude that the findings are not supported by the evidence and that the trial court abused its discretion when it failed even to reserve jurisdiction over spousal support for husband. (See *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 173 P.2d 41].)

That portion of the interlocutory judgment denying an award of spousal support to husband is reversed, and the matter is remanded to the trial court for further hearing on that issue.

White, P. J., and Scott, J., concurred.