Filed 4/10/14  P. v. Yancey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056961 |
| v. | (Super.Ct.Nos. SWF1100175 & SWF1101653) |
| JEFFREY LEWIS YANCEY, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

In January and July 2011, defendant Jeffrey Lewis Yancey was apprehended for removing used tires and other property from two retail tire store sites. A jury convicted defendant of two counts (1 and 3) of felony burglary and two felony counts (2 and 4) of petty theft with priors. (Pen. Code, §§ 459 and 484.)[1] Defendant admitted he had three prior prison term convictions. (§ 667.5, subd. (b).) The court found true a bail violation. (§ 12022.1.) The court sentenced defendant to a maximum of eight years eight months in county jail, including five years five months under mandatory supervision. (§ 12022.1.)

On appeal, defendant contends the court erred in not giving an instruction on the defense of claim of right and committed additional errors by excluding a key witness and evidence of defendant's brain injury.[2] Defendant also claims the court wrongly sentenced him to the upper term. We reject these arguments and affirm the judgment.

II

STATEMENT OF FACTS

*A. January 2011 Incident – Counts 1 and 2*

Richard Richardson, the owner of Best 4 Less Tires in Temecula, testified that he

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] Because we find no instructional or evidentiary error, the cumulative error doctrine does not apply.

stores used tires in a special container outside the store, from which certified haulers may pick up the tires for disposal as hazardous waste. The stationary container has four walls, a roof, and a padlocked door. Surveillance cameras with motion sensors are directed at the main store and the storage container.

On Friday, January 14, 2011, a customer returned four Michelin tires that were unsafe because of weather cracking on the side walls. The tires were locked in the storage container to be returned to Michelin for a refund. On Monday, when Richardson returned to work, the storage container was open and the tires were missing.

Richardson reviewed the surveillance camera footage which depicted a van, towing a trailer, parking near the storage container. A person cut off the padlock and removed the tires. The name "Jeff's Tires" and a phone number were written on the van. The padlock was found in the trash bin.

A sheriff's investigator, James Dickey, called the phone number from the van and made an appointment to look at 245 mm tires, the same size as those taken from Best 4 Less Tires. Dickey and another officer met defendant in a mall parking lot, with eight or 10 other officers stationed nearby. Defendant drove up in the "Jeff's Tires" van with a trailer full of tires. After defendant displayed some size 245 mm tires, Dickey arrested him in January 2011.

After waiving his constitutional rights, defendant stated to Dickey that he had obtained tires from shops in the area. He admitted being the person in the surveillance footage who removed the tires. He claimed he knew there were video cameras because

3

he saw the infrared light. He thought no one would care if he took the tires and he denied stealing them.

Another investigator visited a salvage yard identified by defendant and recovered three Michelin tires that had been sold by defendant. At the police station, Richardson identified three of the missing tires based on the distinctive cracking and portions of the Department of Transportation number.

*B. July 2011 Incident – Counts 3 and 4*

Six months later, on July 9, 2011, at around 10:30 p.m., a Murrieta police officer, Kyle Mikowski, was on patrol when he heard a high-pitched whistle and saw defendant, with blackened hands and face, walking away from the Big O Tires store in Murrieta. When Mikowski spoke to defendant, he seemed agitated and stuttered, struggling to put a sentence together. Defendant's girlfriend, Patty Carter, then drove up in a truck, with tires stacked in the back and an orange dolly. There were no signs of a break-in at the Big O Tires.

Mikowski arrested defendant and Carter and placed them in his patrol car, where their conversation was recorded and in which they agreed to tell the police they got the tires from "Victor." Defendant repeatedly asserted he had not done anything wrong or committed burglary.

The Murrieta police contacted the Big O Tires store in Temecula, which was missing a nonworking dolly matching the one found in the truck. The Temecula Big O Tires stored its used tires in an open-air area with a dumpster and a structure with

4

concrete walls, a wooden roof, and a latched door. A Big O employee identified the dolly and some used tires as being from the store. The dolly had been left outside, under the dumpster.

## C. Prior Incident

On July 15, 2003, a deputy sheriff stopped a man leaving an auto repair shop in Rancho Cucamonga at 1:35 a.m., towing a dozen truck tires. The man gave his name as Jeffrey Yancey. Defendant pleaded guilty to a charge stemming from that stop.

## D. Defense Evidence

Tracy Mitchell had known defendant for four years and helped him in his tire business. She had loaded used tires with him from Best 4 Less Tires and the Big O Tires in Temecula, and she knew the area was under video surveillance. She believed it was okay to take the tires because they were junk tires and stacked outside the storage container. Once, when defendant and Mitchell were collecting tires from a bin, the police stopped them but they were let go without any charges, leading her to believe they were not doing anything illegal.

III

INSTRUCTION ON THE CLAIM-OF-RIGHT DEFENSE

The claim-of-right defense is set forth in CALCRIM No. 1863, which provides in part: "The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. [¶] In deciding whether the defendant believed that

5

(he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] . . . [¶] [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.] [¶] If you have a reasonable doubt about whether the defendant had the intent required for (theft/ [or] robbery), you must find (him/her) not guilty of _____ *<insert specific theft crime>*."

Defendant first contends there is substantial evidence he did not believe he was stealing tires because he knew he was being videotaped and he thought the tires were abandoned. His friend, Mitchell, offered the same opinions in her testimony. Therefore, defendant maintains the trial court should have given a claim-of-right instruction sua sponte because "'""a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. . . . Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it."'"" (*People v. Tufunga* (1999) 21 Cal.4th 935, 943, citing *People v. Barnett* (1998) 17 Cal.4th 1044, 1142-1143.) A mistaken but good faith belief that property has

6

been abandoned can establish a claim of right. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1429-1431.)

If the defense is not inconsistent with the defendant's theory of the case, the trial court must instruct sua sponte on the defense. (*People v. Russell, supra,* 144 Cal.App.4th at pp. 1429-1430.) In *Russell*, the Court of Appeal found sufficient evidence supported the claim-of-right instruction, where the defendant had stated repeatedly he had thought a motorcycle had been abandoned, and many other facts supported that belief such as the condition and location of the motorcycle. (*Russell,* at p. 1430.)

"In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.'" (*People v. Salas* (2006) 37 Cal.4th 967, 982, quoting *People v. Jones* (2003) 112 Cal.App.4th 341, 351.) The trial court, however, is not required to instruct on a claim-of-right defense unless there is substantial evidence to support an inference that the defendant acted with a subjective belief that he had a lawful claim on the property. (*People v. Tufunga, supra*, 21 Cal.4th at p. 944.)

No substantial evidence was presented here. The claim-of-right defense is not available when a defendant tries to conceal his actions or knows they are illegal. (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1849; CALCRIM No. 1863.) Although both defendant and Mitchell claimed they thought they could take the tires and dolly legally, other facts made their claim completely unreasonable. The tires and dolly were located

7

in locked or closed structures and on private property. Defendant did not ask the stores for permission to remove the tires and dolly. Instead, he visited the stores at night, after hours, and, in the January 2011 incident, he cut the padlock to gain access to the tires. When the police stopped defendant during the July 2011 incident, he was nervous and agitated and lied about obtaining the tires from someone named Victor. Although defense counsel tried to argue that defendant was engaged in the equivalent of "dumpster diving," defendant had been convicted of a similar offense in 2003, undercutting his contention that he believed he was not stealing. He also knew what he was doing was illegal because he had been arrested for the same activity six months earlier in January 2011.[3] In view of all these facts, defendant's belief was entirely implausible and not in good faith; there was not substantial evidence to support the instruction.

Furthermore, any error in not giving the instruction was harmless because a more favorable result was not reasonably probable. (*People v. Watson* (1956) 46 Cal.2d 818, 835-836; *People v. Russell, supra*, 144 Cal.App.4th at pp. 1431-1432, citing *People v. Breverman* (1998) 19 Cal.4th 142, 178.) Defendant argues that, if the jury had found defendant held a good faith belief that the tires were being left out to be taken by a person like himself and even if it found that belief unreasonable, the finding would negate the larcenous intent required for theft and burglary, as well as the prosecution's argument

---

[3] When he was arrested for the second offense on July 9, 2011, his trial on the first offense was set for July 25, 2011.

that there was no reasonable explanation for defendant's conduct. Defendant protests that the trial court's failure to instruct the jury on the claim-of-right defense deprived him of his right to offer a defense and impaired his right to have the offense proved beyond a reasonable doubt, violating due process. (*Bradley v. Duncan* (2002) 315 F.3d 1091, 1098-1099; *Estelle v. McGuire* (1991) 502 U.S. 62, 72.) However, as already discussed, the overwhelming evidence against defendant means there was no reasonable probability of a more favorable outcome. (*Russell,* at p. 1432.) The error was also harmless beyond a reasonable doubt. (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1530-1531.) Even if the instruction had been given, the jury would still have convicted defendant who knew what he was doing was unlawful but lied about it.

IV

EXCLUSION OF KEY WITNESS

Defendant next contends the trial court erred by not allowing Oni Avila to testify about industry practices involving tire disposal. Defense counsel described Avila's proposed testimony as follows: "[H]e's a tire shop owner. His testimony has several [facets]. First, he's going to talk about standards in the tire industry, leaving these used tires out for people to collect. He's going to talk about his dealings with Mr. Yancey through his tire business, not as a character reference but rather as a percipient witness to businesses that have been conducting – he's going to talk about pricing, evaluations of tires" and "Mr. Avila will testify he leaves tires out. That in his experience in the industry that they leave tires out because then they don't have to pay the hazardous waste

9

fees." The trial court ruled that Avila's testimony would not be relevant because Richardson testified that he did not leave out used tires to be collected but placed them in a locked storage unit for proper disposal as hazardous waste.

Defendant contends he should have been allowed to impeach Richardson's testimony about storing used tires by using Avila's testimony about industry practice. (*People v. Lang* (1989) 49 Cal.3d 991, 1017; Evid. Code, § 780, subd. (i).) Additionally, if the jury heard evidence that it was standard industry practice to leave tires out to be taken by anyone passing by, the jury could have accepted defendant's explanation that he thought the tires had been abandoned. Thus, defendant maintains the trial court was wrong to decide the proffered evidence was not relevant to disprove a "disputed fact that is of consequence to the determination of the action" (Evid. Code, § 210) and the trial court violated California law and the federal constitutional right to present a defense. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302-303.)

"A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) In this case, it is defendant's argument that borders on patent absurdity. The question of industry practice is not an issue in this case. The two tire stores did not leave their tires out to be collected by defendant or anyone else. Richardson kept his tires, which were meant to be returned to the manufacturer, in a locked storage facility.

10

Defendant had to trespass on the store's property at night and cut the lock in order to "collect" the tires. Similarly, defendant entered the premises of Big O Tires at night and removed the tires from a latched structure, as well as taking the dolly which was being stored on the property. Even if Avila had testified it was industry practice to abandon tires for collection (apparently to dodge procedures and fees for the disposal of hazardous waste), that testimony would not be relevant here in which the two tire stores undisputedly did not engage in such a questionable practice. Even if defendant may have intended to take tires which had been left out for collection, he could not plausibly claim he intended to collect tires that had been locked away or stored on private premises. The trial court certainly did not abuse its discretion in excluding Avila's testimony.

For the same reasons, there was not a reasonable chance of a different outcome if Avila had testified about industry practices. It is simply impossible to credit defendant's claim that he believed he obtained the tires legitimately when he had to break into a locked unit to do so, when he had been previously convicted in 2003, and when he had been arrested in January 2011 before committing additional crimes in July 2011. Any error was harmless whatever the standard of review.

V

DEFENDANT'S BRAIN INJURY

Defense counsel attempted to cross-examine Deputy Dickey about defendant's brain injury, which he sustained during a 2008 carjacking and which affected his ability to communicate, causing stuttering and confusion. The court sustained the prosecution's

11

objections based on relevance.  The court also sustained objections to asking Mitchell

about defendant's mental state.[4]  On appeal, defendant argues evidence of defendant's

alleged mental disability by a lay witness was relevant and admissible on the issue of

intent.  (§ 28, subd. (a); *People v. Coddington* (2000) 23 Cal.4th 529, 582-583, overruled

on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046; *People v. Gurule*

(2002) 28 Cal.4th 557, 621; *People v. DeSantis* (1992) 2 Cal.4th 1198, 1127; *In re*

*Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 409.)  Again we review the trial

court's broad decision to admit or exclude evidence for abuse of discretion.  (*People v.*

*Horning* (2004) 34 Cal.4th 871, 901; *People v. Rodriguez, supra*, 20 Cal.4th at pp. 9-10;

*People v. Cortes* (2011) 192 Cal.App.4th 873, 908.)

Section 28, subdivision (a), makes "[e]vidence of mental disease, mental defect, or

mental disorder . . . admissible solely on the issue of whether or not the accused actually

formed a required specific intent, premeditated, deliberated, or harbored malice

aforethought, when a specific intent crime is charged."  In the absence of expert

testimony, lay witness testimony concerning the defendant's mental condition is

inadmissible.  (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1116-1117.)  Section 29

restricts expert testimony regarding a defendant's mental state; an expert may not testify

"whether the defendant had or did not have the required mental states" including intent

---

[4] Defendant's related argument involving Avila as a lay witness was not raised below.

12

which "shall be decided by the trier of fact." Thus, under sections 28 and 29, only evidence of a defendant's actual mental state when he committed a specific intent crime is admissible to show whether he had specific intent to commit the crime. Evidence to show he did not have the capacity to form such intent is inadmissible and his intent is an ultimate fact reserved to the jury's exclusive determination.

Here, the trial court properly exercised its discretion in excluding proffered testimony about defendant being easily confused because he purportedly sustained a brain injury in 2008. The defense had not presented any expert testimony about defendant's alleged mental disability. Without any expert testimony, neither Investigator Dickey nor Mitchell could testify that defendant in fact sustained a brain injury or that he was easily confused. (See *People v. Moore, supra,* 96 Cal.App.4th at pp. 1116-1117.) Furthermore, their general observations had no bearing on defendant's intent at the time he committed the instant offenses when the witnesses were not present.

The four cases cited by defendant are factually and legally distinguishable. In *In re Marriage of Teegarden, supra*, 181 Cal.App.3d 401, a husband receiving disability for lupus did not present any expert testimony relating to his diagnosis. Instead, his caretaker described the husband's physical disabilities. (*Id.* at pp. 407-409.) The trial court concluded that the husband had not met his burden of proving his need for spousal support. (*Id*. at p. 405.) The Court of Appeal reversed the portion of the interlocutory judgment denying the husband an award of spousal support, finding that expert testimony was not required to conclude from the evidence that the husband's ability to support

13

himself had been severely compromised. (*Id.* at p. 409.) Whereas lay testimony about the husband's illness was relevant to the award of spousal support in *Teegarden*, proffered testimony about defendant here being confused was irrelevant because it had no connection with defendant's intent at the time he was stealing the tires.

In *People v. Webb* (1956) 143 Cal.App.2d 402, the trial court permitted a psychiatrist's opinion of the defendant's mental state and his ability to form specific intent. The court also permitted lay witnesses to testify about objective manifestations of defendant's tenseness and emotional disturbance but excluded lay opinion that defendant's mind was so affected during a killing that he could not have formed a specific intent. The Court of Appeal held it was error to exclude the lay opinion evidence. (*Id.* at p. 410.) In this case, however, the defense did not offer any expert testimony about defendant's mental state. General observations about his state of mind had no bearing on his intent during the crimes.

In *People v. DeSantis, supra*, 2 Cal.4th 1198, the trial court ruled the defendant could not admit the accomplice's own statement that the accomplice "had trouble remembering things 'because of his brain cells'" to show the accomplice recognized that his own memory was impaired. (*Id.* at pp. 1227-1228.) The trial court, however, allowed expert testimony about the accomplice's cognitive shortcomings. The California Supreme Court held the trial court erred in excluding the accomplice's statement about his memory problems which was relevant to his present cognitive difficulties. The error was harmless in view of the admission of a psychiatrist's expert testimony that the

14

accomplice suffered from a borderline personality disorder, affecting his memory and perception, and (2) the accomplice had testified repeatedly that he could not recall various events. (*Id*. at pp. 1227-1228.) *DeSantis* is readily distinguishable because general observations about defendant's confusion were not relevant to the issue of his mental state at the time he committed the crimes. *DeSantis* also involved expert testimony not admitted in this case.

In *People v. Gurule, supra*, 28 Cal.4th 557, defendant claimed a police sergeant usurped the role of a psychiatric expert when the sergeant was permitted to answer the prosecutor's question about whether the sergeant had observed any delusional or hallucinatory speech or conduct on the part of an accomplice. The California Supreme Court found no error in allowing the sergeant to testify the accomplice did not appear distracted or hesitant during the interview and was responsive to questions. (*Id.* at pp. 620-621.) A layperson's observations of a witness's behavior "is relevant to the overall question of the witness's mental state." (*Id*. at p. 621.) Unlike defendant Gurule, observations about defendant's confusion because of a 2008 brain injury had no connection to his intent at the time of the instant crimes.

In summary, the trial court did not abuse its discretion in precluding two lay witnesses from testifying about their observations of defendant's mental condition. Even if the trial court erred, it is not reasonably probable that defendant would have achieved a more favorable outcome. (*People v. Rodriguez, supra*, 20 Cal.4th at pp. 9-10; *People v. Watson, supra*, 46 Cal.2d at pp. 835-836.) The evidence left no doubt that defendant

15

knew he was committing a crime when he broke into the locked or closed structures that contained used tires and removed those tires. Any evidentiary error was harmless under any standard of review.

VI

THE UPPER-TERM SENTENCE

Defendant contends the trial court violated his rights under the Sixth Amendment and section 1170, subdivision (b), by sentencing him to the upper term without expressly stating the reasons on the record and by using his criminal record to impose the upper term, as well as the one-year enhancements for his prior prison term convictions under section 667.5, subdivision (b), the two-year enhancement under section 12022.1, and the increased felony liability for the theft offenses in counts 2 and 4. Defendant's arguments are without merit because the court lawfully imposed both the upper term and the sentencing enhancements.

At the sentencing hearing, the trial court denied probation and sentenced defendant to a term of eight years eight months in county jail, with five years eight months under mandatory supervision by the county probation officer pursuant to section 1170, subdivision (h). The court imposed the upper term of three years on count 1, which was deemed the principal count; a consecutive term of eight months (one-third of the middle term of two years) on count 3; a consecutive term of two years for the section 12022.1 enhancement on count 4; and, three consecutive one-year terms for the three prior prison term convictions. The court imposed the middle term of two years as to count 2 and a

16

term of eight months (one-third of the middle term of two years) as to count 4 and stayed the punishment pursuant to section 654.

The trial court based its sentence on defendant's extensive criminal record but also explained the blended sentence would allow defendant to serve three years in jail and receive the benefit of supervised release for the remaining five years and three months.

"A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Jones* (2009) 178 Cal.App.4th 853, 860, citing *People v. Carmony* (2004) 33 Cal.4th 367, 377.) The party challenging the sentence has the burden to show it was irrational or arbitrary. Otherwise, we presume the trial court acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. A sentence will not be reversed because reasonable people might disagree. The appellate court does not substitute its judgment for the trial court's judgment. (*Jones, supra,* 178 Cal.App.4th at p. 861, and *Carmony,* at pp. 376-377.) An appellate court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence if it had known that some of its reasons were improper. (*Jones,* at p. 861, citing *People v. Price* (1991) 1 Cal.4th 324, 492.)

The trial court shall order a middle term unless there are aggravating or mitigating circumstances; "[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. . . ." (§ 1170,

17

subd. (b).)  In addition, when a court imposes a sentence for a felony pursuant to section 1170, the court must also impose, in addition and consecutive to the offense of which the person has been convicted, the additional terms provided for any applicable enhancements.  (§ 1170, subd. (d).)

Even if defendant did not forfeit his claims of sentencing error, the trial court adequately stated its justification for imposing an upper term.  The record demonstrates that the court selected the upper term in light of defendant's extensive criminal record.  Defendant's lengthy criminal history began on February 25, 2002, when he was convicted of first degree burglary.  His record continues with convictions for unauthorized possession of a controlled substance (felony, July 23, 2003); grand theft (felony, July 23, 2003); burglary (felony, September 8, 2004); being under the influence of a controlled substance (misdemeanor, August 14, 2006); driving with a revoked or suspended license (misdemeanor, September 28, 2006); petty theft with a prior theft-related conviction (felony, March 2, 2007); driving with a revoked or suspended license (misdemeanor, August 21, 2009); driving with a revoked or suspended license (misdemeanor, April 11, 2010); and, driving with a revoked or suspended license (misdemeanor, September 29, 2010).  Defendant performed poorly on probation and parole and rotated in and out prison and jail.  These facts provided an ample basis for imposing the upper term.

The trial court also properly applied the sentencing enhancements.  The amended information alleged three convictions on three different dates:  petty theft with a prior

18

theft-related conviction (March 2, 2007); burglary (September 8, 2004); and, possession of a controlled substance (July 23, 2003). The trial court imposed three consecutive one-year terms for these prior prison convictions under section 667.5, subdivision (b). As described above, the court relied on defendant's extensive criminal history in imposing the upper term. Defendant's criminal history consisted of 10 convictions. Even without the three prior convictions listed in the amended information, seven convictions remained as a basis for the upper term. Thus, the trial court did not abuse its discretion when it imposed both the upper term on count 1 and the sentence enhancements.

## VII

## DISPOSITION

The trial court did not commit instructional, evidentiary, or sentencing error. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.