Filed 1/20/22  Conservatorship of S.V. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| Conservatorship of the Person of S.V. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>S.V.,<br><br>        Objector and Appellant. | A160989<br><br>(Contra Costa County Super. Ct. No. P17-00390) |

S.V. appeals from an order under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code,[1] § 5000 et seq.) reappointing the Contra Costa County Public Guardian conservator of his person for a one-year period that commenced effective July 4, 2020. We understand S.V.'s objection to the consistent pattern of delays he has encountered in the Contra Costa County Superior Court. However, the questions his appeal raises are moot and there are no issues that justify exercising our discretion to hear the case. We therefore dismiss the appeal as moot.

---

[1] Further statutory citations are to the Welfare and Institutions Code.

1

# BACKGROUND

In 2017 S.V. was placed on a temporary psychiatric hold under section 5150 and diagnosed with schizoaffective disorder. The Contra Costa Regional Medical Center recommended a conservatorship, observing that S.V. was "internally preoccupied, disorganized, and frequently agitated. He typically paces the unit, talking to himself and making threatening, 'punching' gestures." S.V. had no insight into the reasons for his hospitalization, appeared disheveled with poor grooming and hygiene, required frequent doses of emergency medication for symptoms of irritability and agitation, and had no plan to care for himself in the community.

Following a 2017 court trial on a conservatorship petition, S.V. was found to be gravely disabled as a result of his mental disorder and a conservator was appointed pursuant to the LPS Act. In 2018 and 2019, due to S.V.'s continuing mental disability, the Contra Costa County Health Services Department (the County) petitioned successfully under section 5361[2] for one-year

---

[2] Section 5361 provides that "[c]onservatorship initiated pursuant to this chapter shall automatically terminate one year after the appointment of the conservator by the superior court. . . . If upon the termination of an initial or a succeeding period of conservatorship the conservator determines that conservatorship is still required, he may petition the superior court for his reappointment as conservator for a succeeding one-year period. The petition must include the opinion of two physicians or licensed psychologists who have a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders that the conservatee is still gravely disabled as a result of mental

renewals of the conservatorship. S.V. appealed both reappointment orders; both appeals were dismissed as moot in light of subsequent reappointments of the LPS conservatorship. (*Conservatorship of S.V.* (Jan. 10, 2020, A155424 [nonpub. order]; *Conservatorship of S.V.* (Apr. 13, 2021, A158326) [nonpub. opn.] (*S.V. I*).)

In June 2020 the County filed the reappointment petition at issue here. At the initial hearing on the petition held July 7, 2020, S.V.'s attorney objected to the reappointment, requested a court trial, and asked for a two-week continuance to determine whether S.V. wished to proceed on a time-waived basis. At the next hearing, held July 21, counsel asked that the trial be set within 10 days, but did not object when the court suggested setting it two weeks out, on August 4.

On August 4, 2020, the County had not yet received records it had subpoenaed from S.V.'s psychiatric facility. S.V.'s attorney agreed to continue the trial until August 18, noting that S.V. wanted to proceed but counsel was unavailable to go forward that day.

On August 18, 2020, the parties stipulated to another continuance. At S.V.'s request, the court reset the trial for September 1, 2020. On September 2, after trailing the case for a day, the court continued it to September 22 "based upon the

_____

disorder or impairment by chronic alcoholism. In the event that the conservator is unable to obtain the opinion of two physicians or psychologists, he shall request that the court appoint them."

Court's schedule for the remaining part of the week and [psychiatrist] Dr. Levin's unavailability starting tomorrow."

The court trial was held remotely on September 22, 2020. The court found beyond a reasonable doubt that S.V. continued to be gravely disabled as a result of a mental disorder, granted the LPS petition and imposed disabilities barring him from refusing psychotropic medication.[3] On September 23, 2020, S.V. filed a timely notice of appeal.

On June 15, 2021, while this appeal was pending, the County filed a new petition for reappointment as conservator for one year from the July 4, 2021 termination of the conservatorship. [4] On August 31, 2021, S.V. filed a petition for writ of mandate and prohibition in this court seeking immediate release and dismissal of the 2021 petition due to a greater than 10-day continuance of the conservatorship trial. In that matter, unlike the case before us, "at the first court appearance on July 6, 2021, petitioner demanded a trial within ten days." "Despite petitioner's objections, the trial in petitioner's matter was delayed 59 days past that mandated by section 5350."

We denied the petition on October 13. We explained: "The trial court could continue the conservatorship trial more than 10

_____

[3] The written reappointment order reflecting the court's rulings was filed October 14, 2021.

[4] We take judicial notice of the records in the writ proceedings and other relevant court records pursuant to Evidence Code sections 452, subdivision (d), and 459. (See *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390 [appellate court has the authority to consider postjudgment events in determining whether an appeal has become moot].)

4

days after petitioner's demand for a trial because the requirement in Welfare and Institutions Code section 5350, subdivision (d)(2) for the court to hold a jury trial within 10 days of a demand is directory, not mandatory.[5] [Citations.] The continuance did not violate petitioner's due process rights since petitioner has not demonstrated the continuance potentially deprived him of a fair trial or affected the jury's verdict."[6]

## DISCUSSION

" '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404; see *In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315 ["When no effective relief can be granted, an appeal is moot and will be dismissed"].) This is such a case. The one-year conservatorship period initiated by the order at issue on this appeal expired in July 2021. On September 23, 2021, the court granted the County's new petition for reappointment of conservator. The 2020 reappointment order therefore has no remaining force and effect and, as its reversal would have no

---

[5] Section 5350, subdivision (d)(2) provides that the conservatorship trial "shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the proposed conservatee."

[6] In entering that order and commenting here on that proceeding, we express no view on any issues that may be raised should S.V. appeal the trial court's order in that case.

5

effect on the 2021 order, this appeal cannot provide S.V. with effective relief. Accordingly, the appeal is moot.

S.V. concedes as much, but contends we should exercise our discretion to retain it to address what he calls the County's failure to conduct his and other conservatorship trials and produce the records required for appeals in a timely fashion. We disagree.

It is true that "if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23.) Courts may choose to exercise this discretion when the recurring issue is an important one that may otherwise evade review. (*Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 3 Cal.5th 497, 511.)

This, however, is not such a case. In *S.V. I, supra,* A158326, we addressed S.V.'s concerns about the timeliness of his and other LPS trials. We explained: "A proposed LPS conservatee has the right to demand a court or jury trial, which 'shall commence within 10 days of the date of the demand.' (§ 5350, subd. (d)(2).) At the request of counsel for the proposed conservatee, the court 'shall continue the trial date for a period not to exceed 15 days.' (§ 5350, subd. (d)(2).)" (*S.V. I, supra*, A158326.) We explained that the importance of timely trials in LPS cases was most recently addressed in *Conservatorship of Jose B.* (2020) 50 Cal.App.5th 963 (*Jose B.*), in which a conservatorship trial

was delayed without explanation by some 137 days. The *Jose B.* court considered whether the delay required dismissal of the conservatorship petition but decided that, because section 5350, subdivision (d)(2), specifies a time limit but does not specify a penalty for exceeding it, it did not. (*S.V. I, supra*, A158326.)

However, we noted *Jose B.*'s admonition that "just because the Legislature had not 'expressly provided' a penalty for failure to follow established time limits 'does not mean trial courts should blithely continue conservatorship trials for their judicial convenience.' " (*S.V. I, supra*, A158326.) We also echoed its directive that the proper remedy for prejudicial delay is to file a motion to dismiss for lack of a speedy trial. We said: "Like the court in *Jose B.,* we are 'deeply troubled by the significant delay' in LPS conservatorship trials and take this opportunity to 'emphasize the statutory obligation of trial courts to hold a jury trial within 10 days.' [Citation.] But here, we note the trial court found good cause for the first delay. . . and counsel made no objection to the second delay. If S.V. was prejudiced by either delay, counsel could have filed a motion to dismiss, but he did not." We also pointed out that counsel could have filed a petition for a writ of mandate directing the trial court to adhere to statutory time limits. That S.V. had done neither "confirm[ed] our view that we should decline to exercise our discretion to address the admittedly moot timeliness issue S.V. raises."

7

We reach the same conclusion here. S.V. took neither of those available steps to protect his statutory speedy trial right.[7] Instead, he asserts it would have been futile to seek dismissal in the trial court because, he assumes, "[t]he superior court quite plainly believes it is free to 'blindly continue conservatorship trials for their judicial convenience' and was not going to grant a motion to dismiss had one been made." He further asserts that, even if successful, a motion to dismiss or a petition for a writ directing the trial court to enforce the statutory time limits would merely have produced further delay. These assumptions, supported only by speculation, do not excuse counsel's inaction. (See *In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 407 [appellant must affirmatively show error by an adequate record]; *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 [presumption that the trial court properly applies the law].)

In any event, as S.V. acknowledges (and as we observed in *S.V. I*), the timeliness requirement for an LPS conservatorship "has been considered in several cases, a few of them recent." (See *Jose B., supra,* 50 Cal.App.5th 963; *Conservatorship of M.M.* (2019) 39 Cal.App.5th 496, 500 [also holding LPS time limits are directory, not mandatory].) Moreover, as demonstrated by the resolution of S.V.'s petition for writ of mandate within six weeks of filing, the availability of writ relief in this court provides an

---

[7] Even S.V.'s petition for a writ of mandate seeking release and dismissal of the 2021 petition did not ask us to direct the trial court to comply with the statutory time limits.

8

avenue for review within tight time constraints.[8] Accordingly, we are not persuaded that this case presents a reason to depart from the general rule against deciding cases in which we can grant no effectual relief.

As we understand it, S.V. believes we should nonetheless disregard his appeal's conceded mootness, but he identifies no legal issue that would otherwise evade appellate review. He implores us to "devise an appropriate remedy to send a clear message" to the superior court "that they must fix this problem and that remedy should have sufficient teeth in it that they take this court's demands seriously." At a minimum, he maintains, we should tell the superior court we will "no longer tolerate the routine delays imposed in SVP cases" and that "in future cases, when proceedings are not held in a timely fashion, this court will expedite the proceedings should the attorney for the LPS defendant file a petition for writ of mandate with this court." S.V's counsel betrays a fundamental misunderstanding of the limits of our role as an appellate court. "Courts may not render advisory opinions on disputes which the parties anticipate might arise but which do not presently exist." (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 542.) "The ripeness element of the doctrine of justiciability is intended to prevent courts from issuing purely advisory opinions. [Citation.] It is 'primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set

---

[8] That we found no merit in the 2021 writ petition does not mean the timeliness issue it raised evaded our review.

9

of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.)

Finally, S.V. contends the superior court's allegedly excessive delays in preparing the appellate record violated his due process rights and that "this is the third appeal in a row that this has happened." We reiterate that we are deeply concerned by what appears to be significant delay in LPS conservatorship proceedings in Contra Costa County Superior Court. However, troubling as we find the delay in preparing the appellate record, it is beyond the scope of this appeal from the 2020 reappointment order. "Matters occurring after entry of judgment are ordinarily not reviewable. The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation." (9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 357.)

This does not leave S.V. or other similarly situated LPS petitioners without a remedy. As we advised in *S.V. I.,* statutory time limits—even if directory rather than mandatory—may be enforced by a writ of mandate compelling the court to act. [9] (See *In re D.P.* (2018) 21 Cal.App.5th 154, 165.) Counsel would be wise to take heed of that advisement rather than pursue the issue in a forum where no effectual relief can be granted.

---

[9] To be clear, we express no opinion as to the outcome were S.V. or another LPS litigant to petition for such relief.

10

To the extent S.V. can be understood to argue that appeals of one-year conservatorship appointment orders are inevitably destined to be rendered moot before they can be decided, we share his concern over the frequency with which appeals in these cases have become moot before a decision can be rendered on appeal. Given existing policies and procedures for obtaining calendar preference, absent the delay in obtaining the augmented record, this case likely would have been decided before the conservatorship expired. (See *Conservatorship of Forsythe* (1987) 192 Cal.App.3d 1406, 1409 [adopting policy to entertain such cases on "expedited appeal"]; Cal. Rules of Court, rule 8.240 [motion for calendar preference].) Nonetheless, it is incumbent on the superior court to consider measures to address delays in setting these cases for trial and the recurring delay in the production of a complete record that too often precludes review in these cases. As discussed at oral argument, the Public Guardian may wish to consider whether, where feasible, renewal petitions such as this one can be filed 60 or more days before the guardianship expiration date.

## DISPOSITION

The appeal is dismissed as moot.

_____
Ross, J.*

WE CONCUR:


_____
Pollak, P.J.


_____
Streeter, J.

*A160989 Public Guardian v. S.V.*

_____

    \* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.