Filed 5/21/24  Marriage of Ross and Crow CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re the Marriage of WILLIAM D. ROSS and STEPHEN R. CROW. | |
| WILLIAM D. ROSS,<br><br>    Appellant,<br><br>v.<br><br>STEPHEN R. CROW,<br><br>    Respondent. | A168522<br><br>(San Francisco City and County Super. Ct. No. FDI-20-794096) |

William Ross appeals a marital dissolution judgment.  He contends the family court abused its discretion in denying his motion to continue trial.  He further argues the court erred in finding that he ousted Stephen Crow from their home and in awarding Crow the home's rental value during the ouster period.  We affirm.

## BACKGROUND

### A.

Several years before their marriage, Ross and Crow purchased a home in San Francisco as joint tenants.  They later registered as domestic partners and, eventually, married.  After Ross petitioned to dissolve the marriage, in November 2020, they

1

continued to live together in the residence for the next 8 months. In June 2021, Crow moved out of the residence, leaving Ross as the sole occupant.

**B.**

About three months before trial to divide the couple's marital assets, the court granted a motion by Ross's counsel to be relieved. The court later granted Ross's ex parte application to continue trial to permit his new attorney more time to prepare, and it set a new trial date for March 21, 2023.

On March 10, 2023, Ross filed a second ex parte application to continue the trial. In a supporting declaration, Ross detailed numerous health issues. He explained he "had difficulty" focusing during [a recent] settlement conference "due to poor health" precipitated by this litigation. He "did not realize until [the judicial settlement conference], . . . that dealing with this divorce action would take a large toll on [his] health." He said that two doctors separately warned him that "undergo[ing] trial" as scheduled imperiled his health. To back up his claims, Ross submitted two doctor's notes. One (from a psychologist) summarized various symptoms, offered a provisional diagnosis, and recommended continuing treatment, but said nothing about being unavailable for trial; the other (from a medical doctor) consisted of a single sentence stating that, based on Ross's medical condition, "he should undergo legal trial at a staggered date."

Four days later (one week before trial), the family court denied the request without a hearing.

On the first day of trial, Ross's counsel stated he did not have a trial brief, witness list, or exhibit list because "his client [was] slow in interacting." Counsel also represented that Ross

was "too ill" to be personally present.  Because neither party procured a court reporter, there is no transcript.[1]

Trial initially proceeded without Ross present.  Crow began testifying.  Ross later appeared via videoconference although he was offline at different times, for reasons that are somewhat unclear, and missed about an hour of Crow's testimony in total.

In a thorough statement of decision, the family court determined the residence was held by the parties as joint tenants because they had purchased it before registering their domestic partnership.  The court granted Crow's request for partition by sale.  It also found Crow was entitled to reimbursement for the imputed rent value because Ross ousted Crow from the residence.  The court found credible Crow's testimony that "he did not vacate the Residence by choice, but because he felt unsafe in the house due to the deterioration of his relationship with Ross, the frequent presence of strangers in the house, and Ross' activities in the house."  Ross subsequently "changed the locks and refused Crow access to the property."

## DISCUSSION

### A.

Ross argues that the court abused its discretion by denying his motion for a continuance.  (See *In re Marriage of Falcone &*

---

[1]  In a footnote in the background section of his opening brief, Ross says that, on the first day of trial, his attorney made a *third* request for a continuance based on Ross's "poor health" and also claiming that Ross had "tested positive for Covid."  The minute order, however, makes no mention of this, and Ross failed to provide a reporter's transcript or settled statement.  The clerk's transcript simply states that Ross's counsel "intends to argue Petitioner's case today."  We assume Ross is not challenging any (undocumented) order denying the alleged request.  But, if so, the record does not demonstrate error.  (See *Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 406–407 (*Teegarden*).)

*Fyke* (2008) 164 Cal.App.4th 814, 823 [standard of review].) We disagree.

Trial dates for civil cases "are firm" and continuances of trials are "disfavored." (California Rules of Court, rule 3.1332(a), (c).)[2] A party seeking a continuance must make a timely motion and demonstrate good cause. (Rule 3.1332(b), (c).) The court must consider all relevant facts, including the proximity of the trial date, any previous continuance, and alternative ways to address the problem. (Rule 3.1332(d).)

Ross primarily argues that he was ill and unavailable for trial. Illness and unavailability *may* provide good cause for a continuance (rule 3.1332(c)(2)) when, for example, supported by a medical doctor's explanation of the illness and expected period of unavailability. (See *Teegarden*, *supra*, 181 Cal.App.3d at p. 406.)

On this limited record, Ross has not demonstrated an abuse of discretion. The court could have reasonably found the ex parte application insufficient, given the deficient one-sentence note from the doctor stating simply that Ross "was seen" and "should undergo legal trial at a staggered date," as well as the availability of videoconference technology (by which Ross did appear), the close proximity to trial, and the court's recent prior order granting an ex parte continuance. Moreover, having received notice of the trial date, and having failed to demonstrate good cause for a continuance, Ross had no right to be personally present at all—although he did appear remotely—so the court had discretion to allow Crow to proceed with his case. (Code Civ. Proc., § 594; *Teegarden*, *supra*, 181 Cal.App.3d at p. 405.)

## B.

Ross challenges the court's finding that Ross ousted Crow from their home and the award to Crow of rental value for the

---

[2] Undesignated rule references are to the California Rules of Court.

ouster period. In reviewing the decision, we defer to the family court's factual findings, but whether ouster occurred is a legal question we decide de novo. (*Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1612 (*Hughes*).) Ross has not demonstrated error.

There is no real dispute about the law. Ouster is "the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession." (*Hughes*, *supra*, 5 Cal.App.4th at p. 1612.) Common law ouster is established by a "cotenant's unambiguous conduct manifesting an intent to exclude another cotenant from gaining or sharing possession of jointly owned property." (*Id.* at p. 1614.) Ross concedes, correctly, that ouster is established when, for example, one cotenant changes the locks and refuses to permit the other cotenant entry. (*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 548.)

Ross cannot evade the court's key finding that supports ouster: "after [Crow] moved out, Ross changed the locks and refused Crow access to the property." He cites no law that requires more detailed findings, such as precisely *when* the locks were changed and exactly *how* Ross refused Crow access. And even assuming the findings are unclear, he forfeited those arguments by failing to object to the statement of decision. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380.) Because he provides no transcript or settled statement, moreover, we must assume the evidence supports the judgment. (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8–9.) We therefore uphold the court's determination that Ross ousted Crow from the house.

Finally, the court properly awarded Crow rental value during the period of ouster. (See *Zaslow v. Kroenert*, *supra*, 29 Cal.2d at p. 548 [ousted tenant is entitled to damages, "which ordinarily amounts to his share of the value of the use and

5

occupation of the land"].)  Ross appears to concede that, if we uphold the ouster findings, the proper measure of damages is the rental value.  As noted, Ross has not provided a record sufficient to challenge the court's finding on when the ouster (and thus rental damages) began, and he failed to raise the issue with the court after it issued its proposed statement of decision.  Thus, we uphold the amount of the award.

We have reviewed Ross's additional arguments and find them to be without merit.

## DISPOSITION

The judgment is affirmed.  Crow is entitled to recover his costs on appeal.  (Rule 8.278(a)(2).)

BURNS, J.

WE CONCUR:

SIMONS, ACTING P. J.
CHOU, J.

*In re Marriage of William D. Ross and Stephen R. Crow / Ross v. Crow  (A168522)*

6