Filed 3/13/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Domestic Partnership of JOAN PABLO TORRES CAMPOS and LESLIE ANN MUNOZ. | |
| JOAN PABLO TORRES CAMPOS, Appellant, v. LESLIE ANN MUNOZ, Respondent. | D085584 (Super. Ct. No. 19FL010817C) ORDER MODIFYING OPINION NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 5, 2026, be modified as follows:

On page 14, at the end of footnote 3, add the following text:

Standard 10.80(b)(3) of the Standards of Judicial Administration, which became effective September 1, 2025, states in relevant part that any "judicial officer using generative AI for any task within their adjudicative role . . . [s]hould take reasonable steps to verify that generative AI material, including any material prepared on their behalf by others, is accurate, and should take reasonable steps to correct any erroneous or hallucinated output in any material used." On its face, this standard

appears to apply only when judicial officers or their own staff use generative AI.  (See also Cal. Rules of Court, rule 10.430(d)(3) [courts permitting use of generative AI must adopt policies that "[r]equire court staff and judicial officers who create or use generative AI material to take reasonable steps to verify that the material is accurate, and to take reasonable steps to correct any erroneous or hallucinated output in any material used"].)  As this case illustrates, it is equally important that judicial officers and court staff who are not themselves using generative AI verify the citations contained in proposed orders submitted to them by counsel.

There is no change in the judgment.

_____

IRION, Acting P.J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Domestic Partnership of JOAN PABLO TORRES CAMPOS and LESLIE ANN MUNOZ. | |
| JOAN PABLO TORRES CAMPOS, Appellant, v. LESLIE ANN MUNOZ, Respondent. | D085584 (Super. Ct. No. 19FL010817C) |


APPEAL from an order of the Superior Court of San Diego County, Lizbet Munoz, Commissioner.  Affirmed.

Law Offices of David C. Beavans and David C. Beavans for Appellant.

Bonar Law Group and Roxanne Chung Bonar for Respondent.

Joan Pablo Torres Campos (Torres) appeals from a family court order denying his request for shared custody and visitation of a dog.  He contends the court committed error by citing and relying on fictitious case authorities in its order.  We agree the court so erred, but we conclude Torres forfeited this claim by drafting and submitting the very order he now challenges and failing to object or alert the court that the cited authorities were fake.  We

further conclude that Torres has failed to provide an adequate record on appeal for us to evaluate his claim relating to a proposed multi-factor test for determining pet custody and visitation under Family Code section 2605. We therefore affirm the order. We also sanction respondent's counsel Roxanne Chung Bonar for citing and relying on the same fictitious legal authorities in initial filings with this court.

We publish this opinion to emphasize that courts and attorneys alike have a responsibility to protect the legal system against distortion by fabricated law, particularly in this new era of hallucinated citations generated by artificial intelligence (AI) tools. In a system of precedents that is designed to achieve consistency, predictability, and adherence to the rule of law, the judiciary cannot function properly unless judges and lawyers confirm the authenticity of cited authorities and review them to evaluate their holdings and reasoning. When the participants fail to perform this basic function, it compromises these institutional values and diminishes faith in the judicial process.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Family Court Proceedings*

In July 2022, the family court in San Diego entered an uncontested judgment of dissolution of the parties' domestic partnership. The judgment provided for Torres and Munoz each to keep as their separate property the assets in their own possession and to assume sole responsibility for all debts in their own names. The judgment did not mention anything about pets.

Two years later, a dispute arose over Torres's request for shared custody and visitation of a pet dog named Kyra. Counsel for Torres filed a request for order (RFO) for shared custody and visitation of the dog under Family Code section 2605, along with a supporting declaration.

In response, Munoz was represented pro bono by her cousin, Bonar. On behalf of Munoz, Bonar wrote a letter to Torres's counsel declining the custody and visitation request. The letter said in relevant part: "We will be relying on legal precedents for this case. We will rely on established case law to support our position: **Marriage of Twigg (1984) 34 Cal.3d 926**, the court held that the emotional well-being and stability of the parties involved are crucial considerations in custody determinations. . . . In addition to Twigg, we also rely on **Marriage of Teegarden (1995) 33 Cal.App.4th 1572**, where the court held the importance of maintaining stability for the dependent parties involved."[1]

*Marriage of Twigg* (*Twigg*) is not a real case. The official citation Bonar provided for *Twigg* is a criminal case having nothing to do with pets or custody determinations (*People v. Mozingo* (1983) 34 Cal.3d 926). As cited in the letter, *Teegarden* is also not a real case. There is a real *Teegarden* case with a different official citation, decided in 1986 rather than 1995, but it concerned spousal support rather than pets and did not focus on the emotional well-being and stability of the parties involved (*In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 407–410 [trial court erred in denying spousal support to disabled husband who suffered from lupus and was unable to work]).

On Munoz's behalf, Bonar also filed an opposition to the RFO with a supporting declaration of Munoz and two witness statements. Munoz's

---

[1] Bonar's letter is not included in the record on appeal but Torres referred to it in his opening brief. In our order to show cause why sanctions should not be imposed against Bonar, we directed her to provide us with a copy of the letter and she complied. Because the letter is not part of the record on appeal, we consider it only as part of the relevant background for the sanctions issue, not the merits of the appeal.

3

declaration was attached to a Judicial Council form with Bonar's name on the caption as her counsel.

Munoz alleged in her declaration that she had custody of Kyra, that Torres had a history of harassing her and damaging her emotional health, that Torres was seeking custody and visitation of Kyra as a form of continuing harassment, and that Kyra was a source of emotional support for her. Munoz's declaration cited the fictional *Twigg* case and stated: "In Marriage of Twigg (1984) 34 Cal.3d 926, the court held and emphasized the importance of the emotional well-being and stability of the parties involved in custody determinations. This precedent applies to pet custody, underscoring the need to prioritize the mental health of the primary custodian."

Torres filed a reply declaration disputing statements made in Munoz's declaration. He failed to point out that *Twigg* was not a real case.

The parties stipulated to have a court commissioner act as a temporary judge to hear the matter. The commissioner held an unreported hearing on the matter on September 19, 2024. According to the minute order, Torres and his counsel appeared in person. Munoz and Bonar appeared remotely. Torres and Munoz were both sworn and examined. At the conclusion of the hearing, the court made no visitation orders and directed Torres's counsel to submit a formal order after hearing.

Torres's counsel submitted a proposed Findings and Order After Hearing, which the court approved as conforming to its oral ruling. The order cited the fictional *Twigg* and *Teegarden* cases as follows:

> "The Court notes the follow[ing] cases: *Marriage of Twigg* (1984) 34 Cal.3d 926 and *Marriage of Teegarden* (1995) 33 Cal.App.4th 1572 [(*Teegarden*)], in which the Court has to take the well-being and stability of the parties involved when deciding pet visitation and custody. Based on the testimony of Ms. Munoz and her mental state as it relates

4

to the parties['] relationship, the Court finds it is not in the best interests of the parties['] mental stability for them to continue to interact with each other, and thus denies pet Custody.

"The Court further finds there is not a substantial relationship between Petitioner and the dog, Kyra, based on the lack of visitation in the past year."

Torres appealed the order. In designating the record on appeal, Torres chose to proceed without a record of the oral proceedings. The record on appeal therefore includes no reporter's transcript or settled or agreed statement of the September 19, 2024 hearing.

B. *Court of Appeal Proceedings*

In August 2025, we dismissed the appeal for failure to file an opening brief. Torres filed a motion to vacate the dismissal and reinstate the appeal. Still represented by Bonar, Munoz filed an opposition to the motion. In her opposition, Munoz cited the nonexistent *Twigg* and *Teegarden* cases to argue that the issue on appeal was not "novel" as Torres claimed in his motion. She asserted: "This isn't new, courts decide these based on what's best for everyone involved (Marriage of Twigg (1984) 34 Cal.3d 926; In re Marriage of Teegarden (1995) 33 Cal.App.4th 1572)."

We denied the motion to reinstate the appeal. Torres then filed a second motion to reinstate the appeal pointing out for the first time that the *Twigg* and *Teegarden* authorities cited in the court's order and in Munoz's opposition to the first motion to reinstate the appeal did not exist and were "invented case law."

Bonar filed another opposition on behalf of Munoz. The opposition stated: "Appellant's Claim of Fabricated Case Law is Baseless." It asserted: "This is a grave accusation, but it is entirely unfounded and reflects

5

Appellant's own failure to conduct basic legal research. Both cases are valid, published precedents, and Appellant's inability to locate them underscores the incompetence that led to his appeal's dismissal." Bonar's opposition purported to provide additional citation information for *Twigg* and *Teegarden* and elaborated on these two cases as follows:

"**A.** **<u>Marriage of Twigg (1984) 34 Cal.3d 926</u>**: This is a legitimate California Supreme Court case, reported at 34 Cal.3d 926, 195 Cal.Rptr. 718, 670 P.2d 340, decided on July 5, 1984. The ruling addresses custody determinations in dissolution proceedings, emphasizing the importance of the emotional well-being and stability of the parties involved. In Twigg, the Supreme Court held that courts must consider factors like mental health and relational dynamics when making custody decisions, reversing a lower court for failing to adequately weigh these elements. The trial court in this case cited Twigg to support its finding that ongoing interaction between the parties would harm Respondent's mental stability due to Appellant's history of harassment. Appellant's claim that this case does not exist is a misrepresentation, likely stemming from inadequate database searches or unfamiliarity with standard legal reporters. Such an error by Appellant's counsel does not invalidate the trial court's reliance on this established precedent.

"**B.** **<u>Marriage of Teegarden (1995) 33 Cal.App.4th 1572</u>**: While the year and volume citation appears erroneous, it is in fact a typographical mistake on counsel's part. In re Marriage of Teegarden (1986) 181 Cal.App.3d 401, 226 Cal.Rptr. 417, decided on May 22, 1986, by the Court of Appeal, First Appellate District, Division Three. In Teegarden, the court reversed a denial of spousal support, holding that the trial court abused its discretion by denying a continuance due to the husband's illness (lupus) and failing to properly consider evidence of his disability and need for support. The ruling stressed the importance of stability, emotional

6

well-being, and a fair evidentiary record in family law disputes. The trial court here cited Teegarden (under the mistaken 1995 reference) to reinforce its emphasis on the parties' mental stability and the need to protect Respondent from further distress. **Appellant's assertion that no such case or parties exist is incorrect;** a simple search for 'Teegarden marriage California' reveals the 1986 decision involving Anne and Byron Teegarden. This misrepresentation not only fails to prove misconduct but exposes Appellant's counsel's deficient preparation, which mirrors the neglect that caused the default."

The opposition went on to assert: "Appellant's accusation of professional misconduct is thus not only meritless but borders on frivolous. Respondent's counsel relied on established precedents, and a minor citation error[] does not constitute fabrication or a breach of duty under California Business and Professions Code 6068(d) or California Rules of Professional Conduct, rule 3.3."

The new information Bonar provided about *Twigg* in Munoz's opposition, i.e., the parallel reporter citations ("195 Cal.Rptr. 718, 670 P.2d 340") and the date of decision ("decided on July 5, 1984"), was also fictitious. Neither of these parallel citations is to a *Twigg* case and no California case by that name was decided on July 5, 1984. Moreover, the parallel reporter citations do not correspond to the "34 Cal.3d 926" citation Bonar provided for *Twigg*.

We granted Torres's second motion to vacate the dismissal and reinstate the appeal. In our order, we also directed Bonar to provide us with a copy of the *Twigg* decision taken from an official reporter and copies of any brief filed in superior court that cited *Twigg* or *Teegarden*.

In response, Bonar admitted for the first time that the *Twigg* case did not exist. She claimed the *Twigg* citation "entered the record from two

7

sources": (1) her client's declaration in opposition to the RFO petition; and (2) the trial court's order denying the RFO. Bonar asserted she could "not recall whether the [*Twigg* or *Teegarden*] case[s] were ever argued" at the hearing in the family court. She admitted she had failed to verify the *Twigg* citation before citing it in this court. According to Bonar, she "mistakenly assumed that, because these materials were part of the Superior Court's official record, the citations had already been vetted and could be relied upon as accurate."

Bonar did not submit any declaration of her own, but she submitted one from her client Munoz. Munoz explained that the *Twigg* case was discussed in a Reddit article a paralegal friend had sent her, and Munoz did not realize the case was fictitious. The Reddit article was attached as an exhibit to Munoz's declaration. It was authored by "Sassafras Patterdale," who was identified as "a blogger, podcaster, and animal rescuer, who writes about divorce, custody, and the messy, beautiful lives we weave." The article was about pet custody battles. It cited "Marriage of Twigg (1984) 34 Cal.3d 926" as a "watershed" California Supreme Court case holding "that custody determinations must consider the emotional well, being [*sic*] and stability of the parties."

The Reddit article did not include the parallel reporter citations and date of decision for *Twigg* that were included in Bonar's opposition to the second motion to reinstate the appeal. Neither Bonar's response to our order nor Munoz's declaration explained where this additional fictitious information came from.

We issued an order to show cause why sanctions should not be imposed against Bonar for citing and relying on fictitious authority in her oppositions to the motions to reinstate the appeal and providing additional fictitious citations for the *Twigg* case from the California Reporter and Pacific Reporter

8

and a fictitious date of decision in her opposition to the second motion to reinstate this appeal.

In her response to the order to show cause, Bonar argued she should not be sanctioned because she did not act with any intent to deceive and the error caused no prejudice. She asserted that "the reference to Marriage of Twigg came from an article shared with me by my cousin, Leslie Ann Munoz, . . . during a family dinner discussion. . . . The article was read in front of family members and I genuinely believed it when it was presented." She asserted that "[t]he same citation later appeared in the [FOAH] drafted by [Torres]'s counsel at the trial court's direction." Bonar explained, "I genuinely thought I had to defend the trial court's order as written, including its citations, and was mistaken in not verifying them independently." She also asserted that she "did not persist in defending the authority once its nonexistence was confirmed."

Although our order to show cause explicitly referred to the *additional* fictitious citations for the *Twigg* case and the fictitious date of decision contained in Bonar's opposition to the *second* motion to reinstate this appeal, her response still did not explain where this information came from. At oral argument, Bonar claimed she could not remember where this additional fictitious citation information came from. She acknowledged she did not have a paid subscription to a legal research service at the time, and she was using other online resources including AI for this purpose. She also conceded she may have obtained fictitious information about *Twigg* and *Teegarden* using AI tools.

DISCUSSION

We resolve both the merits of the appeal and the sanctions issue in this opinion. We address each separately.

I

On the merits, Torres first argues the family court's order must be reversed because of its reliance on fictional cases cited by Bonar and her client Munoz. We agree the court erred by citing and relying in material part on fictional cases in its written order. We conclude, however, that Torres forfeited this claim by drafting and submitting the very order containing these fabricated citations and doing so without calling the court's attention to the error or asserting any objection to its reliance on them.

Family Code section 2605 gives a court discretion to make orders concerning the care and ownership of household pets in a proceeding for marital dissolution or legal separation of the parties. We review such orders for abuse of discretion. (Cf. *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [child custody and visitation orders reviewed for abuse of discretion].)

"Discretion is compatible only with decisions 'controlled by sound principles of law . . . .' " (*People v. Bolton* (1979) 23 Cal.3d 208, 216.) " '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.) "An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

We have no difficulty concluding that it is an abuse of discretion for a court to rely in material part on fictional case authorities in rendering a decision or making an order. Reliance on fake cases is fundamentally

10

incompatible with an informed exercise of discretion controlled by genuine principles of law. It seriously undermines the integrity of the outcome and erodes public confidence in our judicial system. It can also hinder meaningful appellate review. (See, e.g., *Shahid v. Esaam* (2025) 376 Ga.App. 145, 150 [918 S.E.2d 198, 202–203] [citation of fake cases rendered trial court's written order defective on its face and required reversal because it prevented meaningful appellate review].) Although we appreciate that trial courts must often rely on the parties to prepare written orders, it is imperative for both the court and the parties to verify that the citations in all orders are genuine and truly stand for the propositions cited. This is especially vital with the increasing incidence of hallucinated case citations generated by AI tools. (See *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 443 (*Noland*).)

The family court therefore erred by citing and relying solely on fictional cases in its final order. This is not to say that the factors the court relied on were legally improper or that it could not have reached the same result applying proper legal reasoning grounded in genuine law. We hold only that the path the court took to reach its result constituted an abuse of discretion because it relied in material part on the holdings of nonexistent legal authorities purportedly emphasizing the importance of the parties' well-being and stability in determining pet custody, which may have influenced the weight the court gave to these factors.

In the highly unusual circumstances of this case, however, we conclude that Torres forfeited this claim of error.[2] Under the doctrine of forfeiture, "a

---

[2] "Although 'waiver' and 'forfeiture' are often used interchangeably to describe a party's failure to raise an issue in the trial court, the two terms should be differentiated." (*Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 856.) Forfeiture is the failure to make the timely assertion

11

reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been made but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*) "The rule is designed to advance efficiency and deter gamesmanship." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264 (*Keener*).)

Under this doctrine, "a party loses the right to appeal an issue caused by affirmative conduct or by failing to take proper steps at trial to avoid or correct the error." (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167; accord *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 378.)

Torres forfeited his claim of error both by his affirmative conduct and his inaction. Although Munoz and Bonar were responsible for improperly citing these fictitious authorities in the first place, Torres's own counsel affirmatively drafted and submitted the proposed order with these citations that was ultimately signed by the family court. And even though his own counsel drafted the order, Torres failed to object to the court's reliance on these citations or call the court's attention to the issue. The forfeiture rule applies to a party's failure to object to the language of a proposed order when it had an opportunity to do so. (*City of San Marcos v. Coast Waste Management* (1996) 47 Cal.App.4th 320, 328 ["By repeatedly failing to object to the language of the proposed written order, [appellant] effectively waived any objection to it"]; see also *People ex rel. Herrera v. Stender* (2012) 212

of a right, whereas waiver is the intentional relinquishment or abandonment of a known right. (*Ibid.*) Forfeiture is the correct legal term to describe the loss of the right to raise an issue on appeal due to the failure to assert it in the trial court. (*Id.* at pp. 856–857.)

Cal.App.4th 614, 644–645 [appellant forfeited challenge to language of court notice by failing to challenge it or seek modification in trial court]; *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 [party's failure to bring deficiencies in tentative decision to trial court's attention forfeits right to raise such defects on appeal].)

"The requirement of an objection is premised upon the idea that a party should not sit on his or her hands, but instead must speak up and provide the court with an opportunity to address the alleged error at a time when it might be fixed." (*Keener, supra*, 46 Cal.4th at p. 266.) Torres had ample opportunity to object to the court's reliance on these fictitious authorities before the court signed the order that his own counsel drafted citing and relying on them. We are also confident the error would have been avoided if Torres had made a timely objection.

We deem it particularly significant that Torres's counsel herself had a duty to verify the citations she included in the proposed order. An attorney submitting any document to a court has an obligation to verify the citations contained in it. "Simply stated, no brief, pleading, motion, or any other paper filed in any court should contain *any* citations . . . that the attorney responsible for submitting the pleading has not personally read and verified." (*Noland, supra*, 114 Cal.App.5th at p. 431.) It is particularly important for an attorney to verify the citations contained in any proposed order submitted for signature by the court. Notwithstanding Bonar's own misconduct in citing these nonexistent authorities, which we address later in this opinion, it was Torres's counsel who ultimately prepared and submitted the proposed order without verifying the citations contained in it or alerting the court. " 'Counsel should not forget that they are officers of the court, and while it is

13

their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1096.)

Accordingly, we conclude that Torres has forfeited this claim. We reach the same conclusion regarding Torres's related claim that Bonar's professional misconduct in citing the fake authorities requires reversal. This claim could have been raised and any prejudice cured in the trial court if Torres's counsel had just attempted to verify the cited cases. Although we have discretion to overlook the forfeiture, we decline to do so because it would effectively excuse Torres's own counsel's breach of her duty to the court in submitting the proposed order without verifying the citations. (Cf. *People v. Potts* (2019) 6 Cal.5th 1012, 1036 [declining to exercise discretion to excuse forfeiture of prosecutorial misconduct claim that "could have been easily remedied by a timely objection and an admonition"].)[3]

II

Torres next argues that Family Code section 2605 should be clarified to adopt a multi-factor test for determining custody and ownership of a household pet. We reject this argument because Torres has failed to provide a reporter's transcript or settled or agreed statement of the September 19, 2024 hearing on the matter.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment [or order] is ordinarily presumed to be correct and the burden is on

_____

[3] To address the emergence of AI-generated fake citations, we recommend that the Judicial Council or other appropriate committees consider adopting guidelines or rules for judges and attorneys on verification of citations, particularly those in orders drafted by the parties and submitted to the court for signature.

an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment [or order]. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] . . . ' "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)

"A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.) "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.) The "lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court." (*Jameson, supra*, 5 Cal.5th at p. 608.)

In this case, the family court heard live testimony at the hearing of September 19, 2024. The minute order states that both parties were sworn and examined at the hearing. Yet the appellate record does not include a reporter's transcript or settled or agreed statement of the hearing. Torres has therefore failed to provide an adequate record on appeal. "The absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion. [Citations.] As the party

15

challenging a discretionary ruling, [Torres] had an affirmative obligation to provide an adequate record so that we could assess whether the court abused its discretion." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.)

We cannot evaluate the Family Code section 2605 issue raised by Torres without a record of the oral proceedings. Without an adequate record, we cannot assess whether Torres preserved the argument regarding his proposed multi-factor test for determining pet custody, whether the trial court committed any error even if this was the appropriate test, or whether any such error would have been prejudicial. If Torres argued a different legal standard in the family court or failed to present any evidence regarding the factors he now contends the court should have considered, then his argument on appeal could be forfeited or any error invited. Alternatively, if Torres raised the argument and presented evidence to support it, a proper record of the oral proceedings could reflect that the family court took these factors into consideration and committed no error even under Torres's theory. The mere fact that the court's final order does not mention all these factors does not necessarily mean it did not consider them. A trial court is "not required to mention every arguably pertinent item of evidence before it, let alone explain in minute detail its view of each item." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 565; *Ibid.* [claim that trial court disregarded evidence was not supported by court's "failure to refer [to it] in its statement of decision"].) And even assuming any error, a record of the hearing could establish that it was harmless based on the totality of the evidence and the family court's factual findings that it was not in the parties' best interests to continue to interact with each other and there was no substantial relationship between Torres and the dog.

16

Torres also suggests that when a reporter's transcript is unavailable, providing an agreed or settled statement as an alternative record of the oral proceedings is merely optional. As we have explained, however, an appellant's obligation to provide an adequate record on appeal is not optional. " 'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant.' " (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) "By failing to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him." (*Ibid*.) We therefore affirm the family court's order.

III

We next consider whether to impose sanctions against Bonar for citing and relying on fictitious legal authorities in her oppositions to the motions to reinstate this appeal.

Business and Professions Code section 6068, subdivision (d), states it is the duty of an attorney "[t]o employ . . . those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." California Rules of Professional Conduct, rule 3.3(a)(1) and (2), prohibit an attorney from "knowingly mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer" or "knowingly misquot[ing] to a tribunal the language of a book, statute, decision or other authority." A person's knowledge may be inferred from the circumstances. (Cal. Rules Prof. Conduct, rule 1.0.1(f).)

We may impose sanctions against appellate counsel for committing any unreasonable violation of the California Rules of Court. (Cal. Rules of Court,

17

rule 8.276(a)(4).)  Relying on fictitious legal authority is sanctionable conduct because it constitutes an unreasonable violation of the rules requiring that each point be supported by actual legal authority (*id.*, rule 8.204(a)(1)) and prohibiting citation of unpublished authorities (*id.*, rule 8.1115(a)).  (*Shayan v. Shakib* (2025) 116 Cal.App.5th 619, 624–625 (*Shayan*); *Schlichter v. Kennedy* (2025) 116 Cal.App.5th 24, 31–34 (*Schlichter*); *People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1118–1120 (*Alvarez*); *Noland, supra*, 114 Cal.App.5th at pp. 443–447.)

Bonar admits that she cited fictitious authority to the court, including the fictional *Teegarden* case apparently generated by AI and the nonexistent *Twigg* case discussed in the Reddit article that was authored by a non-attorney blogger.  She also admits she did not verify this authority.  For an attorney to cite and rely on a fictional case obtained from a Reddit article or an AI prompt without verifying and reading the case itself is an unreasonable violation of the Rules of Court.  "[I]t is a fundamental duty of attorneys to *read* the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited."  (*Noland, supra*, 114 Cal.App.5th at p. 445.)  "[T]he rules of this court impose on attorneys the obligation to assure that filings they sign do not falsely represent the holdings of cases."  (*Shayan, supra*, 116 Cal.App.5th at p. 624.)

Making matters worse, even after counsel for Torres pointed out that *Twigg* was an invented case in his second motion to reinstate the appeal, Bonar doubled down.  She continued to insist it was a "valid, published precedent[]" and a "legitimate California Supreme Court case, reported at 34 Cal.3d 926, 195 Cal.Rptr. 718, 670 P.2d 340, decided on July 5, 1984."  Until Bonar filed this opposition, no one had previously supplied these additional

18

fake citations to the unofficial California and Pacific Reporters or the bogus date of decision, none of which came from the Reddit article or was included in the family court's order or Munoz's original declaration. This additional citation information was just as phony as the original citation. Yet Bonar in the same document accused *opposing* counsel of "incompetence" and "failure to conduct basic legal research" and "inadequate database searches or unfamiliarity with standard legal reporters."

As we have emphasized, " ' "[h]onesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense." ' " (*Alvarez, supra*, 114 Cal.App.5th at p. 1119.) Bonar's conduct falls far short of her duty of candor with the court under the California Rules of Professional Conduct and constitutes an unreasonable violation of the Rules of Court. Because Bonar's conduct "involves an inherent risk" of citing inaccurate and spurious law, and she persisted in this conduct even after being alerted to the fake authorities, the record "supports an inference that [she] knowingly and unreasonably violated the rules." (*Shayan, supra*, 116 Cal.App.5th at p. 625 [citing *Alvarez, supra*, 114 Cal.App.5th at pp. 1119–1120].)

In *Alvarez*, we imposed sanctions of $1,500 against counsel for citation of fabricated authority. (*Alvarez, supra*, 114 Cal.App.5th at p. 1120.) Division Two of our court recently imposed sanctions of $1,750 for citation of fabricated authority. (*Schlichter, supra*, 116 Cal.App.5th at p. 34.) We view Bonar's conduct as significantly more serious for two reasons. First, Bonar persisted in and aggravated the misconduct by providing additional fictitious citation information for *Twigg* and insisting it was "a legitimate California Supreme Court case" even after opposing counsel pointed out that *Twigg* was a fictitious case and even though she knew it came from an unreliable and

unverified Reddit article.  Second, Bonar still has not been completely forthcoming with this court because she has not explained how she came up with the additional fictitious citation information she provided for *Twigg* that did *not* come from the Reddit article, other than to concede at oral argument that it "may have" come from her use of AI tools.  We will therefore impose sanctions in the amount of $5,000.

## DISPOSITION

The order is affirmed.  Respondent's counsel Roxanne Chung Bonar is ordered to pay $5,000 in sanctions payable to the clerk of this court no later than 30 days after the remittitur issues.  As required by Business and Professions Code section 6086.7, subdivision (a)(3), the clerk of this court is directed to forward a copy of this opinion to the State Bar of California upon issuance of the remittitur.  This disposition serves as notice to counsel that the imposition of sanctions will be reported to the State Bar of California.  (*Id.*, § 6086.7, subd. (b).)  Bonar is also ordered to personally report the sanctions to the State Bar of California.  (*Id.*, § 6068, subd. (o)(3).)  The parties shall bear their own costs on appeal.


BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.

20